**Opinion filed March 15, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00276-CV

_____

## IN THE INTEREST OF B.S.M., A CHILD

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV 11-07-268**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of B.S.M.'s mother and father.  Both parents appeal.  We affirm.

*Issues*

B.S.M.'s parents have filed a joint brief.  In the first issue, they challenge the legal and factual sufficiency of the evidence to support the termination of the mother's rights.  In the second issue, they challenge the legal and factual sufficiency of the evidence to support the termination of the father's rights.  Within each issue, the parents contend that the evidence is insufficient to show that they constructively abandoned B.S.M., that they failed to obey a court order necessary for the return of B.S.M., and that termination of their parental rights is in the best interest of B.S.M.

*Legal and Factual Sufficiency*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

*A. Constructive abandonment*

In this case, the trial court found that each parent had committed two of the acts listed in Section 161.001(1): constructive abandonment pursuant to Section 161.001(1)(N) and failing to comply with the necessary provision of a court order pursuant to Section 161.001(1)(O). Pursuant to Section 161.001(1)(N), the trial court specifically determined that the parents had constructively abandoned B.S.M. because B.S.M. had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and (1) the Department or authorized agency had made reasonable efforts to return B.S.M. to the parents, (2) the parents had not regularly visited or maintained significant contact with B.S.M., and (3) the parents had demonstrated an inability to provide B.S.M. with a safe environment. *See id.* § 161.001(1)(N). The parents specifically challenge the sufficiency of the evidence regarding the last two elements of constructive abandonment: that the parents had not regularly visited or maintained significant contact with the child and that the parents had demonstrated an inability to provide the child with a safe environment.

The record shows that B.S.M. was born in July 2011 while her mother was incarcerated. The mother spent thirteen months in prison and was released on November 22, 2011. B.S.M. was placed under the managing conservatorship of the Department on July 26, 2011, when the father failed to pick up B.S.M. after she was born and the parents failed to provide an alternative

placement. The father testified that he had made arrangements for B.S.M. but that he was not allowed to get her. The father's testimony was controverted by evidence indicating that he informed the Department that he was unable to take care of B.S.M. When the father failed to pick up B.S.M., she was placed in a foster home. The final hearing in this case was held on August 27, 2012.

After she was released from prison, the mother visited B.S.M. on only three occasions. The mother refused the visits that were offered only to her and not also to the father because she did not want to visit B.S.M. without the father being present also. The father testified that, initially, he could not visit B.S.M. because he "was out of state." The parents visited B.S.M. a total of three times and had not seen her since she was six months old; she was thirteen months old at the time of the final hearing. The parents had opportunities for "a lot more visits," which were scheduled by the Department, but the parents did not attend the scheduled visits. Thus, the parents failed to regularly visit or maintain significant contact with B.S.M. while she was in the Department's care. Evidence was introduced indicating that the Department instituted a family service plan and made reasonable efforts to work with the parents. The parents, however, failed to comply. There was also evidence that both parents demonstrated an inability to provide B.S.M. with a safe environment. Throughout the case, the parents lacked adequate transportation, which would be required to transport B.S.M. to doctor's appointments. During much of the case, they lacked appropriate housing because they lived with the mother's father, who was a "sexual predator." Although the parents testified that they had moved into suitable housing prior to the final hearing in this case, they refused to allow the caseworker to see the home during an attempted home visit.

The findings made by the trial court pursuant to Section 161.001(1)(N), including the disputed findings that the parents had not regularly visited or maintained significant contact with B.S.M. and had not demonstrated an ability to provide B.S.M. with a safe environment, are supported by clear and convincing evidence. Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the parents' contention regarding the sufficiency of the evidence to support the trial court's finding under Section 161.001(1)(O). *See* TEX. R. APP. P. 47.1.

*B. Best Interest of B.S.M.*

The parents also challenge the trial court's best interest finding. Pursuant to Section 161.001(2), the trial court found that termination of the parents' rights was in the best interest of B.S.M. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

Both parents had a criminal history, and B.S.M. was born to an incarcerated mother. When B.S.M. was born, the mother had been convicted of forgery and was incarcerated for violating the terms of probation. The father had convictions for aggravated assault and DWI, had been arrested three times for domestic violence, and had also been charged with another assault. Both parents exhibited anger toward the providers and caseworkers throughout this case, and a majority of the interactions between the parents and others involved in this case digressed to "a shouting match and a cursing match." The Department's caseworker, Elizabeth Flores, testified that placing B.S.M. with the father would concern her because of his anger problem. Although the father had reported having a long history of drug and alcohol abuse and had admitted to the caseworker that he had used marihuana and cocaine while this case was pending, he testified at trial that drug use was not an issue for him.

Neither parent completed the family service plan. The father's services were terminated because no progress was being made; he was uncooperative and exhibited anger to the point of being "out of control." The mother performed some of her services, but the counselor wanted

4

the mother "to continue to do counseling because she wasn't making much progress." The mother refused, and her sessions were ended.

The record shows that B.S.M. needs constant medical care due to a genetic defect called Turner syndrome. Flores testified that B.S.M.'s special needs are potentially life-threatening. The father refuses to accept B.S.M.'s diagnosis, and the parents failed to attend an appointment that they were asked to attend with B.S.M.'s doctor in Fort Worth. Flores testified that, since July 2011, B.S.M. had been placed in a foster home for special-needs children. B.S.M. was getting the specialized attention that she needed in the foster home and, though developmentally delayed because of her genetic disorder, had made a lot of progress and was "doing quite well." The Department's goal for B.S.M. was to find a permanent placement for her. At the time of trial, there was one family that had previously adopted a child with Turner syndrome and was interested in B.S.M. Flores did not believe that the parents could meet the medical needs of B.S.M. The court-appointed guardian ad litem was also of the opinion that termination of both parents' rights would be in B.S.M.'s best interest. She did not think the parents would be able to care for B.S.M. properly. Based on the evidence presented at trial, particularly the special needs of the child and the parents' apparent inability to meet the child's special needs, the trial court could reasonably have formed a firm belief or conviction that termination of both parents' parental rights would be in the best interest of B.S.M.

We cannot hold that the findings as to constructive abandonment and best interest are not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the findings that the mother and the father constructively abandoned B.S.M. and that termination of the mother's and the father's parental rights is in the best interest of B.S.M. The parents' issues on appeal are overruled.

The trial court's order of termination is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

March 15, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.